IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JENKINS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-0688-CV-W-REL |
| | ) | |
| PFIZER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is defendant's motion for summary judgment on the grounds that (1) plaintiff cannot proffer any direct evidence of discrimination, (2) plaintiff has failed to establish a prima facie case of racial discrimination, (3) plaintiff is unable to demonstrate the defendant's actions were a pretext for racial discrimination, (4) plaintiff cannot satisfy the requirements of a retaliation claim, and (5) plaintiff failed to fulfill the administrative prerequisites for filing a claim under the Missouri Human Rights Act ("MHRA"). I find that plaintiff has failed to exhaust his administrative remedies on the MHRA claim and therefore summary judgment will be granted as to that claim. I further find that there are material facts that remain in dispute. Therefore, defendant's motion for summary judgment on the remaining claims will be denied.

## I. BACKGROUND

On July 20, 2006, plaintiff filed a petition against defendant in Jackson County Circuit Court alleging he suffered retaliation and racial discrimination when he was terminated, in violation of Title VII and the Missouri Human Rights Act. On August 18, 2006, defendant removed the case to federal district court. On October 27, 2006, plaintiff filed an amended complaint alleging that he was entitled to a right-to-sue letter from the Missouri Human Rights Commission ("MHRC").

On December 14, 2007, defendant filed a motion for summary judgment on the above-stated grounds (document number 56). On January 18, 2008, plaintiff filed a response in opposition (document number 67). On January 24, 2008, plaintiff filed a motion to amend/correct his response (document number 68). That motion was granted; however, plaintiff did not file his amended response. It remains an attachment to his motion to amend/correct. On February 4, 2008, defendant filed its reply (document number 71). On February 27, 2008, plaintiff filed a motion for leave to file a sur-reply. That motion was granted, and plaintiff filed his sur-reply on March 6, 2008 (document number 79). On March 20, 2008, defendant filed a motion for leave to file a sur-sur-reply. That motion was granted; however, defendant never filed the sur-sur-reply. It remains an exhibit to its motion for leave to file the sur-sur-reply (document

2

number 80). In the order granting leave to file the sur-sur-reply, I stated, "This will be the final brief filed on the motion for summary judgment." However, on March 28, 2008, plaintiff filed a motion for leave to file new supplemental authority, attaching the supplemental authority to his motion (document number 82).

Defendant's motion for summary judgment includes 33 proposed undisputed facts. In plaintiff's response, he admitted more than half the proposed facts and cited almost exclusively to his deposition testimony and his declaration in disputing the remaining facts. Plaintiff also listed 174 additional proposed undisputed facts. In its reply, defendant objected to all but seven of plaintiff's 174 proposed findings of fact. Defendant's objections were for the most part boilerplate, including objections based on vagueness, lacking relevance, and relying on hearsay. In most, if not all, instances, defendant failed to explain how those objections were relevant, and in most cases they were not. Defendant objected to such things as the fact that plaintiff was assigned to "Pfizer's Kansas City, Missouri territory", instead arguing that "plaintiff's territory included portions of Kansas City, Missouri". Defendant objected to the proposed fact "Plaintiff returned to Kansas City" on the basis that it is vague, irrelevant, unsupported by any citation to the record, and then "subject to and without waiving these

3

objections, Pfizer admits that at some point after the meeting in September in Denver, Plaintiff returned to Kansas City." A great majority of defendant's objections are based on relevance. Because only a disputed **material** fact (i.e., a fact that is of consequence to the determination of the action, see F.R.E. 401) will prevent summary judgment, objecting based on lack of general relevance has absolutely no effect on the outcome[1]. Irrelevant evidence, even if admitted by the opposing party, will not prevent the granting of a summary judgment motion.

Drafting pleadings in this manner serves only to multiply (to a great extent) the amount of time the court must work on these motions and results in a summary judgment ruling taking much longer than the anticipated trial. This is a curious strategy for the party seeking summary judgment, when the court has the discretion to take the motion with the case rather than ruling the motion prior to trial. In addition, in order for a summary judgment motion to be granted, the court must find that there are **no** material disputed facts. Disputing more than 160 proposed facts when the goal of a party seeking summary judgment is to have no disputed facts is unusual to say the least.

---

[1]Rule 56(c) states, in relevant part, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any **material** fact and that the moving party is entitled to a judgment as a matter of law." (emphasis added).

4

Additionally, I note that nearly every exhibit relied on by plaintiff is inadmissible as presented. In accordance with Federal Rule of Civil Procedure 56(e), affidavits are required to "be made on personal knowledge" and to "set forth such facts as would be admissible in evidence" and "show affirmatively that the affiant is competent to testify to the matters stated therein." Most, if not all, of plaintiff's evidence of disparate treatment is inadmissible because there is nothing in the affidavits establishing that the affiant is competent to testify to the treatment of white employees. In addition, Rule 56 requires that documents be sworn or certified copies accompanied by an affidavit. Clearly Rule 56 requires that summary judgment be granted on the same evidence which would be admissible at a trial. Absent a stipulation or failure to object, no party could, during a trial, hand the jury a document such as the exhibits relied upon by plaintiff without having some sort of testimony from someone who could identify the document and explain its contents. Rule 56 does not permit such evidence either.

Because I have determined, as explained below, that there are material facts which remain in dispute, I will not (as is my normal practice) address all of the proposed undisputed facts and their responses, as such an approach would take literally weeks given the posture of the briefing in this case.

5

## II.  STANDARD FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The key to determining whether summary judgment is proper is ascertaining whether there exists a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if:  (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party. American Academy of Family Physicians v. United States, 75 A.F.T.R.2d 95-1709 (W.D. Mo. 1995), aff'd 91 F.3d 1155 (8th Cir. 1996).  The party moving for summary judgment has the burden of proving that these requirements for summary judgment have been met.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

In a summary judgment analysis, a court must first consider whether there are any issues of fact.  If the only issues are issues of law, then summary judgment is appropriate.  Disesa v. St. Louis Community College, 79 F.3d 92, 94 (8th Cir. 1996).  If issues of fact are raised, a court must consider whether these

issues are material to the outcome of the case.  Materiality is identified by the substantive law that is to be applied. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  Factual disputes that are collateral to the substantive law will not preclude summary judgment.  Id.

In addition to the requirement that a dispute of fact be material, the dispute must also be genuine.  A dispute of fact is considered genuine if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party.  Id. at 249.  When considering a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor.  Id. at 255.  If the evidence submitted by the non-moving party is merely colorable or is not significantly probative, then summary judgment may be granted.  Id. at 249-250.

Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  This burden is met when the moving party identifies portions of the record demonstrating an absence of a genuine issue of material fact. Id. at 323.  If the moving party meets the requirement, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial.  Anderson

7

v. Liberty Lobby, Inc., 474 U.S. at 248. The trial judge then determines whether a trial is needed -- "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

### III. MISSOURI HUMAN RIGHTS ACT

Defendant argues that it is entitled to summary judgment on plaintiff's claim under the Missouri Human Rights Act on the ground that plaintiff never received a right-to-sue letter as required. In his response, plaintiff admits that he did not obtain a right-to-sue letter, and he does not contest defendant's motion in this regard. Therefore, defendant's motion for summary judgment on the Missouri Human Rights Act claim will be granted.

### IV. RACIAL DISCRIMINATION

When relying on direct evidence to avoid summary judgment, the plaintiff must provide evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action. King v. Hardesty, 517 F.3d 1049, 1057 (8th Cir. 2008); Quick v. Wal-Mart Stores, Inc., 441 F.3d 606, 609 (8th Cir. 2006), quoting Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004). For example, in U.S. E.E.O.C. v. City of Independence, Mo., 471 F.3d 891, 895 (8th Cir. 2006), the

8

defendant in an age discrimination case made the following statements:

- "I didn't know you were that old".
- "Well, you're of retirement age, Richard, you're over 60. You can't draw donated leave time."
- Plaintiff "was informed that he was ineligible to utilize the Program due to his age."

These statements were all found to be direct evidence of age discrimination. Id. See also EEOC v. Liberal R -II School Dist., 314 F.3d 920, 923 (8th Cir. 2002) (direct evidence may include evidence of actions or remarks of the employer that reflect a discriminatory attitude); Kneibert v. Thomson Newspapers, Mich. Inc., 129 F.3d 444, 452 (8th Cir. 1997); Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993).

A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part McDonnell Douglas[2] analysis to get to the jury, regardless of whether his strong evidence is circumstantial. Id.; Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004).

Under the mixed-motives test established in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), "[i]f there is direct evidence of [race] discrimination, the burden rests with the employer to

---

[2]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

9

show that it more likely than not would have made the same decision without consideration of the illegitimate factor." Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1046 (8th Cir. 2005) (citing Price Waterhouse, 490 U.S. at 258).  A plaintiff may proceed under the Price Waterhouse approach if he produces direct evidence of conduct or statements by persons involved in the decision-making process, which indicate a discriminatory attitude  was more likely than not a motivating factor in the employer's decision.  Price Waterhouse, 490 U.S. at 258.  "At the summary judgment stage, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was **a** motivating factor in the defendant's adverse employment action.  If so, the presence of additional legitimate motives will not entitle the defendant to summary judgment."  Griffith v. City of Des Moines, 387 F.3d at 735 (emphasis in original).

   If the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the McDonnell Douglas analysis, including sufficient evidence of pretext. Id.  Under the McDonnell Douglas analysis, there is a shift in the burden to come forward with evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The plaintiff must first establish a prima facie case of race discrimination.  Once the prima facie case is established, a

10

legal presumption of unlawful discrimination is created.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993).  The burden of production then shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action.  If the defendant comes forward with a non-discriminatory explanation, the presumption of unlawful discrimination drops from the case.  <u>Id</u>. at 511.  The burden of production then returns to the plaintiff to rebut the defendant's explanation by showing that the proffered reason is actually a pretext for intentional discrimination.  <u>Id</u>. at 508.  The burden of proof remains with the plaintiff at all times.  <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981).

In order to establish a prima facie case of race discrimination, plaintiff must show that (1) he was a member of a protected group, (2) he was meeting the legitimate expectations of his employer, (3) he suffered an adverse employment action, and (4) there are facts that permit an inference of discrimination. <u>Canady v. Wal-Mart Stores, Inc.</u>, 440 F.3d 1031, 1034 (8th Cir. 2006).  A plaintiff may make a sufficient showing of pretext by different means, including showing that an employer: (1) failed to follow its own policies, <u>Ledbetter v. Alltel Corporate Servs., Inc.</u>, 437 F.3d 717 (8th Cir. 2006); (2) treated similarly-situated employees in a disparate manner, <u>Putman v. Unity Health Sys.</u>, 348 F.3d 732 (8th Cir. 2003); or (3)

11

made substantial changes over time in its proffered reason for an employment decision. <u>Kobrin v. Univ. of Minn.</u>, 34 F.3d 698 (8th Cir. 1994), <u>cert</u>. <u>denied</u>, 522 U.S. 1113 (1998).

Plaintiff alleges the following direct evidence of discrimination:

1. During a field ride, Ms. Pauley asked plaintiff about the college he attended, South Carolina State University, which is a historically black college/university. Ms. Pauley asked if plaintiff ever ate fried Oreos in the cafeteria. Plaintiff asked what she was talking about. Ms. Pauley replied, "Well you sure look like one to me."

Defendant objects to this proposed fact. In support, plaintiff cites his own deposition testimony stating that this occurred, and defendant cites to Ms. Pauley's affidavit[3] stating that she did not make these statements. Therefore, this proposed fact remains in dispute.

2. In relation to calling on a white physician, Ms. Pauley suggested that plaintiff did not need to call on him and stated

---

[3]Defendant has cited (in this and multiple other paragraphs) to "Pauley Dec." without indicating what exhibit number it is. The scheduling order explicitly ordered the parties NOT to do this. It is extremely time-consuming for me to sift through dozens upon dozens of exhibits to see which one is Ms. Pauley's declaration. See document number 24, page 2, footnote 1: "Any reference to the exhibit in the motion or suggestions shall identify the exhibit by its number or letter (i.e., do not refer to "deposition of John Smith" without indicating which exhibit number that deposition has been marked.)"

12

her basis as, "with the way you are and your kind." Plaintiff took exception to the comment and reported it to Cheryl James.

Defendant objects to this proposed fact. In support, plaintiff cites his own declaration and deposition testimony stating that this occurred, and defendant cites to Ms. Pauley's affidavit stating that she did not make these statements. Therefore, this proposed fact remains in dispute.

3. Upon their first in-person meeting, Ms. Pauley discussed with plaintiff crime statistics in the Kansas City area and made special effort to emphasize that the perpetrators were inevitably African-American.

Defendant objects to this proposed fact. In support, plaintiff cites his own deposition testimony stating that this occurred, and defendant cites to Ms. Pauley's affidavit stating that she did not make these statements. Therefore, this proposed fact remains in dispute.

Because there are material issues of fact that remain in dispute, defendant is not entitled to summary judgment on plaintiff's race discrimination claim.

## *V. RETALIATION*

Title VII makes it unlawful for an employer to discriminate against an employee because he has opposed any unlawful employment practice. Bassett v. City of Minneapolis, 211 F.3d 1097, 1104 (8th Cir. 2000). To establish a prima facie case of

13

retaliation, the plaintiff must show (1) he engaged in statutorily protected conduct, (2) he suffered an adverse employment action, and (3) the adverse action was causally related to the protected activity. Green v. Franklin National Bank, 459 F.3d 903, 913-914 (8th Cir. 2006); EEOC v. Kohler Co., 335 F.3d 766, 772 (8th Cir. 2003).

Plaintiff offers the following evidence of retaliation:

1. Present by phone at this meeting in Denver on September 1, 2005, was Michael Diaco. During this meeting, plaintiff made known that he was being mistreated because of his race.

Defendant objects to this fact on the ground of hearsay; however, plaintiff was present during this meeting and has first-hand knowledge of these facts to which he testified. Defendant also objects based on defendant's lack of knowledge. Lack of knowledge by an opposing party, a response used repeatedly by defendant, is not an appropriate response in a summary judgment pleading. "Lack of knowledge" is an appropriate response in an answer to a complaint. In a summary judgment pleading, the opposing party is responsible for pointing to the record to contradict a proposed fact. If there is no citation to the record in the objection, and the proposed fact is adequately supported in the record by its proponent, it is deemed uncontroverted. See Federal Rule of Civil Procedure 56.

14

Defendant also objects to the fact that plaintiff made known that he was being mistreated because of his race and then cites what appears to be a portion of an e-mail, which is inadmissible as it is not properly authenticated.

2. Shortly thereafter, Jane Pauley wrote a final warning letter to plaintiff outlining the problems with his performance, including problems with how plaintiff performed in doctors' offices. There is a dispute as to whether Ms. Pauley truthfully reported the problems plaintiff had with doctors, as Ms. Pauley testified that she talked to Dr. Randy Buckles about this, yet Dr. Buckles denied in his deposition ever having said anything negative to Ms. Pauley about plaintiff. Ms. Pauley testified that Dr. Buckles told her he felt pressured to sign a letter saying he had no problem with plaintiff; however, Dr. Buckles testified in his deposition that he never told Ms. Pauley that.

These are material facts which remain in dispute and may affect the outcome of plaintiff's retaliation claim. Therefore, defendant's motion for summary judgment on the retaliation claim will be denied.

## VI. CONCLUSION

Because there remain material issues of disputed fact on both plaintiff's discrimination claim and on his retaliation claim, it is

15

ORDERED that defendant's motion for summary judgment on these two claims is denied. It is further

ORDERED that defendant's motion for summary judgment on plaintiff's Missouri Human Rights Act claim is granted.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
April 25, 2008