IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

CHRISTOPHER JENKINS, JR.,           )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Case No. 06-0688-CV-W-REL
                                    )
PFIZER, INC.,                       )
                                    )
            Defendant.              )

**REDACTED ORDER**

Before the court are (1) a motion to deny claim for attorney's lien, and (2) a motion to enforce settlement. I find that the parties did agree to settle this case for $**REDACTED** plus injunctive relief. I further find that plaintiff's contract with his attorneys provided for a 50 percent contingent fee. Therefore, the motion to deny claim for attorney's lien will be denied and the motion to enforce settlement will be granted.

*I.   BACKGROUND*

On July 31, 2006, plaintiff filed an action in Jackson County Circuit Court alleging that he had been discriminated against by Pfizer, Inc., due to his race. Pfizer removed the case to federal court on August 18, 2006. On April 25, 2008, I entered an order granting in part and denying in part defendant's motion for summary judgment. The trial, which had been set for June 2, 2008, was continued until July 14, 2008, at the request of the parties on the ground that they had agreed to meet with a

mediator on May 27, 2008.  Subsequent to the mediation, I was informed that the case had settled.

On July 9, 2008, plaintiff's lawyers filed a notice of attorney's lien (document number 96).  On July 17, 2008, plaintiff filed a pro se motion to deny claim for attorney's lien (document number 97).  Plaintiff stated that "[t]he defendant rejected the mediator's proposal and the Plaintiff has requested that Jenkins Counsel prosecute the case moving forward to trial." Plaintiff also stated that his attorneys advised they would

> no longer represent him in any additional claims wherein plaintiff has only very recently been issued right to sue letters for continuous action and for other claims related to the subject matter in this case that Plaintiff has right to bring into suit.  Plaintiff believes that Jenkins Counsel reneged on its promise to further represent him in additional claims related to this matter that are unrelated to the merits of the claims filed in this case.  Plaintiff asserts that Jenkins Counsel executed a binding contract to represent him in any claims against any corporations and whomever is liable for any and all damages (actual, consequential special, and/or punitive) owed to client arising from and connected with the subject matter of their engagement. . . .
>
> Plaintiff has consistently asked Jenkins Counsel to continue to represent him in this matter through trial which his Counsel has agreed to do and in any other matters included in the retention agreement which his Counsel has informed him they will no longer do, to protect his interests, to protect confidential information, to treat Plaintiff fairly, and to comply with any deadlines established if the Court grants new trial order at the reasonable request by any attorneys for either Plaintiff or Defendant upon all undersigned attorneys dutifully notifying the court as officers of the court that in fact mediation did fail and to minimize any delay moving forward.

2

On July 28, 2008, defendant filed a motion to enforce the settlement (document number 101). The motion states in part as follows:

> On May 22, 2008, the parties attended a mediation session in Chicago with Lynn Cohn, the Director of the Program on Negotiations and Mediation at Northwestern Law School. During the mediation, the parties agreed to several non-monetary terms of settlement, but were unable to agree on a dollar amount for the settlement. At the close of the mediation session on May 22, Ms. Cohn made a "mediator's proposal" including the agreed-upon non-monetary terms and a monetary settlement amount proposed by Ms. Cohn, which the parties agreed to accept or reject within two business days.
>
> Pfizer rejected Ms. Cohn's proposed amount. However, upon receiving notice of Pfizer's rejection of the proposal, Ms. Cohn contacted Pfizer and inquired as to Pfizer's willingness to continue settlement negotiations with Jenkins through her. Pfizer assented to continued mediation of the matter, and on June 4, 2008 -- within a day of Ms. Cohn renewing her mediation efforts -- the parties agreed to a settlement amount and renewed agreement on the non-monetary terms discussed at the initial mediation session. Pfizer was notified of the agreement and confirmed settlement terms via telephone by Ms. Cohn, and later by Jenkins' counsel. Upon being notified that a settlement had been reached and at Jenkins' counsel's request, counsel for Pfizer contacted the Court to notify it that a settlement had been reached. . . .
>
> In the ensuing weeks, Pfizer and counsel for Jenkins prepared a settlement agreement memorializing the monetary and non-monetary terms of the settlement and the arrangements for payment of the settlement proceeds. Pfizer proffered a final verison of the settlement agreement to Jenkins' counsel on July 3, 2008. . . . In light of the impending pretrial conference which had been set for July 10, 2008, counsel for Pfizer again contacted this Court on the afternoon of July 3, 2008 to advise that a settlement agreement had been finalized and needed only to be executed by Jenkins before the dismissal would be filed. This Court notified counsel for Pfizer that the parties were not expected to appear for the pretrial conference.

3

On August 4, 2008, plaintiff's attorneys filed an opposition to plaintiff's pro se motion to deny attorney's lien (document number 104, filed under seal). The response states in part as follows:

**R E D A C T E D**

On August 20, 2008, plaintiff filed a pro se response to the motion to deny claim for attorney's lien (document number 110, filed under seal).

**R E D A C T E D**

On September 8, 2008, I held a teleconference during which plaintiff admitted that prior to the teleconference, he had implied he would withdraw his motion to deny the attorney's lien by telling my law clerk that he "just wanted it to be over." However, he stated he had changed his mind, that he wanted a hearing, and that he intended to testify. The attorneys stated they would prefer to submit evidence by way of affidavits (all counsel are from out of state as is plaintiff). In the middle of the teleconference, plaintiff either hung up or was disconnected. I was unable to get everyone back on the phone; therefore, the conference call was discontinued. That same day I entered an order directing the parties to submit evidence by way of affidavits by September 25, 2008.

On September 25, 2008, plaintiff's attorneys submitted an affidavit of Lee Winston and an affidavit of Roderick Cooks

4

(document number 114, filed under seal). That same day, plaintiff submitted his own affidavit (document number 115).

## II. *MOTION TO ENFORCE SETTLEMENT*

*Jurisdiction*. In general, a federal court does not have jurisdiction to hear a motion to enforce settlement, which is a state-law contract claim. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 381-82 (1994). Almost all of the case law on this issue involves motions to enforce settlement which are raised after a motion to dismiss is entered. A federal court may retain jurisdiction to hear a motion to enforce settlement by specifically stating so in the order of dismissal. Id. In this case, there has been no order of dismissal. When a motion to enforce settlement agreement is filed before the case is dismissed, the case is still on the court's docket and nothing has been done to divest the federal court of jurisdiction. Sadighi v. Daghighfekr, 66 F. Supp. 2d 752, 758 (D.S.C. 1999). Therefore, I find that this court has jurisdiction to hear the motion to enforce settlement.

*Hearing*. When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions. Federal Rule of Civil Procedure 43(c). This rule invests the district court with considerable discretion to tailor the proceedings to the practical realities surrounding the particular motion. Stewart

5

v. M.D.F., Inc., 83 F.3d 247, 251 (8th Cir. 1996). The Eighth Circuit has held that as a general rule, an evidentiary hearing should be held when there is a substantial factual dispute over the existence or terms of a settlement. Id.; TCBY Systems, Inc. v. EGB Assocs., 2 F.3d 288, 291 (8th Cir. 1993), cert. denied, 511 U.S. 1108 (1994). But this rule "presupposes that there are essential issues of fact that can only be properly resolved by such a hearing." Stewart v. M.D.F., Inc., 83 F.3d at 251. See also Sheng v. Starkey Labs., Inc., 53 F.3d 192, 194-195 (8th Cir. 1995) (remanding for a hearing where the district court enforced a settlement agreement on an erroneous ground, and did not fully consider whether the disputed terms were material); Greater Kansas City Laborers Pension Fund v. Paramount Indus., Inc., 829 F.2d 644, 646 (8th Cir. 1987) (remanding for an evidentiary hearing where counsel agreed to a settlement allegedly without consent from his client, who was not in court to object to its enforcement). There is no automatic entitlement to an evidentiary hearing simply because the motion concerns a settlement agreement. Stewart v. M.D.F., Inc., 83 F.3d at 251; Vaughn v. Sexton, 975 F.2d 498, 505 (8th Cir. 1992), cert. denied, 507 U.S. 915 (1993).

In this case, I have received and reviewed literally hundreds of documents -- mostly e-mails, but also contracts for employment, professional services agreements, and other

6

documents.  During the teleconference in September, plaintiff stated that he wanted to have a hearing, and that he intended to testify and present exhibits, some of which had been presented as exhibits to the pleadings and others which had not yet been presented to the court.  Plaintiff did not identify what documents he thought were relevant that had not already been presented to the court, and I cannot imagine why plaintiff would not have included those among the hundreds he had already submitted in his motion and reply.

As I stated in my September 8, 2008, order, many of the exhibits plaintiff submitted were duplicates not only of exhibits that had been presented by counsel but also duplicates of his own exhibits, resulting in the same document appearing in the record over and over.  I determined that holding a hearing would not be beneficial as (1) the testimony could be taken by way of affidavit; (2) the parties were given an opportunity to submit any additional exhibits they believed to be relevant so long as they had not already been produced as exhibits to the pleadings; and (3) plaintiff's attorneys had already agreed not to charge him for thousands of dollars of expenses for which plaintiff is liable under the contract, and forcing counsel to attend an out-of-state hearing would not be equitable in that it would (a) increase the expenses for which the attorneys would not be reimbursed, or (b) cause plaintiff's attorneys to reconsider

7

their offer to cover the expenses, resulting in plaintiff footing the bill for that trip and possibly the additional $6,000 of outstanding expenses his attorneys are currently offering to pay. Therefore, these motions will be determined based on the affidavits and all of the exhibits which have been presented to me in the motions, responses, and replies (no additional exhibits were presented when the affidavits were filed).

*Meeting of the Minds*.  A valid settlement agreement need not be in writing -- unless the subject matter of the settlement is governed by the statute of frauds, a court may enforce an oral settlement agreement that contemplates the execution of documents at a later time.  Chaganti & Associates, P.C., v. Nowotny, 470 F.3d 1215, 1221 (8th Cir. 2006).[1]  The essential elements of a valid settlement agreement are the involvement of parties who are competent to contract, a proper subject matter, legal consideration, mutuality of obligation, and mutuality of agreement.  Id.  There is no dispute that the alleged settlement was made by parties competent to contract, and the subject matter is proper.

---

[1] The lawsuit in Chaganti was a state court action which had been removed to federal court and therefore the court applied Missouri law on this issue.  In this case, plaintiff's Missouri Human Rights Act claim was dismissed and only his federal claim remained.  Although Chaganti and other federal cases cite state law in support of their rulings on motions to enforce settlement, I cite those cases not because this is a state law issue but because their reasoning is persuasive.

8

Consideration exists when there is a detriment to one party or a benefit to the other, and mutuality of obligation exists whenever there is consideration. Id. "Mutuality of agreement requires 'a mutuality of assent by the parties to the terms of the contract,' i.e., a 'meeting of the minds.'" Id. quoting L..B. v. State Comm. of Psychologists, 912 S.W.2d 611, 617 (Mo. Ct. App. 1995). "A court should determine whether such a meeting of the minds took place by 'looking to the intentions of the parties as expressed or manifested in their words or acts.'" Id. quoting L.B., 912 S.W.2d at 617.

Based on the evidence presented to me, I find that there was a meeting of the minds and that the parties agreed to settle this case for $**REDACTED** in addition to injunctive relief. This finding is based on the following evidence:

**R E D A C T E D**

On August 1, 2008, plaintiff filed a pro se lawsuit in state court naming Pfizer and Jane Pauley as defendants (Doc. 106-2). Plaintiff's allegations are the same as those made in this lawsuit.

Based on all of the above, I find that on June 3, 2008, Ms. Cohn telephoned plaintiff's counsel and suggested $**REDACTED** plus injunctive relief, that sometime on June 4, 2008, plaintiff authorized Lee Winston to make that offer, that on June 5, 2008,

9

the mediator telephoned Lee Winston to say the settlement offer had been accepted**[.]**

**R E D A C T E D**

Because almost all of the evidence in this case was presented as e-mails -- presented both by plaintiff and by his attorneys -- there is very little evidence in dispute. I find that credible evidence supports a finding that the parties agreed to settle this case for $**REDACTED**.

**R E D A C T E D**

Based on all of the above, I find that plaintiff's affidavit stating that he never gave his attorneys the authority to settle this case is not credible.

An attorney cannot enter into a settlement agreement that binds a client unless that client gives the attorney authority to do so. Chaganti & Associates, P.C. v. Nowotny, 470 F.3d at 1222. "A court, however, will presume that an attorney has the necessary authority if the attorney's statements or conduct imply the authority to settle. The client then has the burden of proving that the attorney acted without authority." Id.

I find that plaintiff has failed to satisfy his burden of establishing that his attorneys acted without authority when they offered to settle the case for $**REDACTED**.

10

*III. CONCLUSION*

Based on all of the above, I find that there was a meeting of the minds and that the parties did indeed agree to settle this case for $**REDACTED** plus injunctive relief. Therefore, it is

ORDERED that the defendant's motion to enforce the settlement agreement is granted. There are many references in the e-mails to the final settlement documents. Therefore, I assume that the parties had agreed on the proper wording of all of the documents that are part of the settlement agreement. It is

ORDERED that the parties file the settlement documents within one month of the filing of this order. In the event there remains any additional disagreement over the wording of any document involved in this settlement, each side shall present its version and I will determine which version or combination of versions will be used.

I have reviewed the contract plaintiff signed with his attorneys providing for a 50 percent contingent fee, as well as plaintiff's complaints in e-mails about his displeasure with that percentage (even though his contract with his previous attorneys was the same). There is no doubt that plaintiff agreed to a 50 percent contingent fee. Whether he wishes it were lower is not relevant.

It is

11

ORDERED that plaintiff's motion to deny the notice of attorney's lien is denied.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
December 3, 2008

12